## LOGAN BILLINGSLEY v. STATE.

No. A-169. Opinion Filed January 5, 1911.

1. INTOXICATING LIQUORS—Unlawful Possession—Statute—Sufficiency of Title. A portion of the title of the Act approved March 24, 1908, (ch. 61, Snyder's Comp. L. Okla.) is, "Prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquor"; and that provision of sec, 1, art. 3 of said act, (sec. 4180, Snyder's Comp. L. Okla.) declaring it unlawful for one to have in possession any of the liquors mentioned in said section with the intent to sell the same, is incident to prohibiting the sale of such liquors, and is within the title of the act.

2. INTOXICATING LIQUORS—Interstate Commerce—Delivery—State Control. When liquor, shipped from without this state to a consignee in this state, has been received by the latter from the railway company, and hauled to his place of business and unloaded and deposited in the place designated by him for that purpose, it is no longer an interstate shipment; and if the consignee intends to violate the prohibitory law with such liquor, the same instantly becomes subject to seizure and the consignee to prosecution.

3. INTOXICATING LIQUORS—Possession With Intent to Sell—Evidence. In a prosecution for having liquor in possession with the intent to sell the same, the quantity in possession is a circumstance which may be considered in determining the existence or absence of the intent to sell.

4.    SAME. In a prosecution for having liquor in possession with the intent to sell the same, proof that the defendant frequently received shipments of liquor in quantities larger than he himself might reasonably consume, may be received as a circumstance tending to show the intent to sell.

5.    INSTRUCTIONS—Credibility of Witnesses—Harmless Error. An instruction that the jury may disregard the entire testimony of any witness whom they believe to have testified falsely to any material fact, and which leaves out of consideration the question whether such false testimony was wilfully and knowingly given, is erroneous; but where the defendant did not testify himself or introduce any witness in his behalf, the error is not prejudicial to him.

6.    INTOXICATING LIQUORS—Possession With Intent to Sell— Evidence—Internal Revenue Record. A certified copy of the record of the collector of internal revenue, made by the deputy collector in the name of the collector, under the seal of the latter's office, showing that a defendant has paid the special tax required of liquor dealers by the laws of the United States, is admissible as evidence in a prosecution for having liquor in possession with intent to sell same, and constitutes prima facie proof of the intent to sell.

7.    EVIDENCE—Copies of Official Records—Explanatory Notes— Judicial Notice. It is not proper for an officer, in making a certified copy of a record in his possession, to testify in his certificate to the meaning of the terms or abbreviations used in such record; but where he does so, and the terms or abbreviations are such that the court will take judicial notice of their meaning, and the meaning of the terms as given in the officer's certificate is in accordance with the court's judicial knowledge, the mere fact that such explanation or definition is contained in the certificate is no ground for excluding the certified copy from evidence.

8.    SAME. The courts in this state will take judicial notice that the abbreviation, R. L. D., as used in the records of the collector of internal revenue, means "Retail Liquor Dealer."

(Syllabus by the Court.)

*Appeal from Caddo County Court; B. F. Holding, Judge.*

Logan Billingsley was convicted of having in his possession intoxicating liquor with the intent to sell same, and he appeals. Affirmed.

*C. H. Carswell* and *Bristow & McFayden,* for plaintiff in error. *Fred S. Caldwell,* for the State.

RICHARDSON, Judge. Plaintiff in error demurred to the information in this case on the ground that that provision of sec. 1 of art. 3 of the act approved March 24, 1908 (sec. 4180, Snyder's Comp. L. Okla.) which declares it to be unlawful for any person to have in possession any of the liquors mentioned in said section with the intent to sell the same, is unconstitutional and void, because it is not expressed in the title of the act as required by sec. 57, art. V of the Constitution; and he assigns the action of the court in overruling the demurrer as error. The title of the act in question is as follows:

"An act to establish a State Agency and local agencies for the sale of intoxicating liquors for certain purposes; and providing for referring the same to the people; prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquors, except as herein provided; providing for the appointment of an attorney, and for the enforcement of the provisons of this act; making an appropriation and declaring an emergency."

It will be observed that a portion of the title is, "Prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquor"; and we think the provision against having liquor in possession with the intent to sell the same is so clearly incident and relevant to prohibiting the sale of such liquor, and is so evidently a legitimate means to that end, as to render either argument or a citation of authorities to that effect superfluous. This provision is plainly within the legitimate scope and purview of the title of the act, and the demurrer was therefore properly overruled.

It is urged that the verdict herein was contrary to the law and the evidence, in that it was shown that the liquor in question was an interstate shipment, that it had not reached its destination when it was seized, that it was not in plaintiff in error's possession, and that it was not shown that plaintiff in error intended to sell, barter, give away or otherwise furnish the same to any person. It was shown that the liquor in question, consisting of four cases of whisky, was shipped to plaintiff in error from Weston, Mo.; that it was received by him at the railway depot in

Anadarko, and at his instance was hauled by a drayman to plaintiff in error's place of business and was there unloaded by the drayman and deposited at the place designated by plaintiff in error for that purpose, near the back door of the latter's place of business; that, as the drayman was leaving, the sheriff and his deputies seized the whisky, reloaded it on the dray and had the drayman haul it to the jail. The liquor had therefore reached its destination before it was seized; the shipment had terminated, and if plaintiff in error intended to violate the law with the liquor, it was then as fully subject to seizure, and plaintiff in error to prosecution, as if the liquor had been in his possession for a month. There is nothing in the contention that the whisky was not in plaintiff in error's possession. It was his, was in the place where he directed that it be put, and was in his custody and control; and that constituted possession. As to plaintiff in error's intent to sell the liquor, the quantity in possession was a fact to be considered in determining that question. Also it was shown that, within a period of less than two months immediately preceding this shipment, he had received nineteen different shipments of whisky aggregating 1,941 pounds in weight. It was further shown that he had paid the special tax required of retail liquor dealers by the laws of the United States, and plaintiff in error did not testify himself or introduce any witnesses in his behalf. Nothing was produced in explanation or rebuttal of the case made by the state. These facts amply justified the jury in finding that he intended to sell this particular whisky.

A portion of the twelfth instruction given is complained of, and was as follows:

"You are further permitted, under the law, to disregard the whole or any part of any witness' testimony who has testified before you, who, in your judgment, you believe has testified falsely to any material fact, except in so far as such testimony is corroborated by other and competent testimony."

This instruction was not correct. The court may properly instruct the jury that, if they believe from the evidence that any witness has *wilfully and knowingly* sworn falsely as to any

material matter, then they may, if they deem proper, disregard the entire testimony of such witness, unless they find it corroborated on other points by other and credible evidence; or they may, without such corroboration, give the testimony of such witness on other points such weight and value as they think it entitled to have, the jury being the sole judges of the credibility of all the witnesses and the weight and value to be given their testimony. But the mere fact' that a portion of a witness' testimony respecting a material matter may be found to be untrue, without considering whether the witness acted in good faith in giving it, and without determining that he wilfully and knowingly testified falsely, does not justify applying to such witness and to his testimony the maxim, *Falsus in uno, falsus in omnibus.* The question is not alone whether the witness is wrong as to a particular matter about which he has testified, but also whether he has knowingly and wilfully falsified and thereby shown that he has no regard for the truth. But it is not every time that an erroneous instruction of this character will furnish cause for reversal; and that it does not do so in this case is plain, for the reason that plaintiff in error did not testify himself or introduce any witnesses in his behalf; and the only effect the instruction could have had, if it had any, was to weaken the force of some of the evidence against plaintiff in error.

The state offered and the court admitted in evidence a certified copy of the records of the collector of internal revenue at Leavenworth, Kan., as follows:

"Record of Special Taxes, District of Kansas.

"Name, Anadarko Distg. Co., Logan Billingsley; Business R. L. D.; Place, Anadarko, Ok.; Date of Payment, Dec. 2, 1908; Amount of tax, $25.00; From what time, July, '08; No. of Form, 11, 3846; Serial No. of stamp, 56580; Remarks, 12/2/08. Present location.

"'Treasury Department, Dec. 30, '08.

"Leavenworth, Kansas,

"Collector's Office.

"I, J. M. Simpson, the undersigned, hereby certify that I am the Collector of Internal revenue for the District of Kansas and

the custodian of revenue record No. 10 for the District of Kansas; that the above and foregoing is a true and correct copy of said record No. 10 in my office and a true and correct copy of the above and foregoing names as they appear and are on said record No. 10 in my office of the Collector of Internal revenue for the District of Kansas, as above set forth.

"Record No. 10 is a record of all special tax payers in the District of Kansas.

"R. L. D. is an abbreviation for retail liquor dealer.

"W. L. D. is an abbrevation for wholesale liquor dealer.

"R. M. L. D. is an abbreviation for retail malt liquor dealer.

"W. M. L. D. is an abbreviation for wholesale malt liquor dealer.

"Per          (SEAL.)          J. M. SIMPSON,
   "C. L. DANIELS,          ·          Collector.
   "Deputy Collector."

Plaintiff in error objected to the admission of this certified copy in evidence on the ground that it was not properly authenticated, and on the further ground that that portion of the certificate wherein the meaning of the abbreviations, R. L. D., W. L. D., R. M. L. D., and W. M. L. D., is explained was an attempt on the part of the collector to give testimony in his certificate. The Act of Congress of June 21, 1906, ch. 3509, 34 Stat. L. 387 (Fed. Stat. Ann., Supp. 1909, p. 250), requires the collector of internal revenue to furnish certified copies of these records to the prosecuting officer of any state, county or municipality; and by that article of the Constitution relating to prohibition and by sections 4181, 5905, and 6834 of Snyder's Comp. L., such copy is admissible in evidence in this state. *State v. Dawdy,* 145 N. C. 432, 58 S. E. 1002. The certified copy may be made by the deputy collector in the name of the collector under the seal of the latter's office, as was done in this case. *State v. Shook,* 75 Kan. 807, 90 Pac. 234. It is not proper for an officer, in making a certified copy of a document or record in his possession, to testify in his certificate to the meaning of the terms or abbreviatons used in the record. But the fact that the officer  in his certificate to this record explained the meaning of the abbreviations mentioned

was not prejudicial, for the reason that the courts in this juris-diction will take judicial notice of the meaning of the abbrevia-tions above set out as used in the records of the internal revenue collector, and it was the duty of the trial court to instruct · the jury in this case that the letters "R. L. D.," as used in this cer-tified copy, meant "Retail Liquor Dealer." *State v. Nippert,* 74 Kan. 371, 86 Pac. 478; *City of Topeka v. Stevenson,* 79 Kan. 394, 99 Pac. 589; *State v. Howard* (Me.) 40 Atl. 65. The alleged testimony contained in the certificate was therefore harmless. The certified copy in question was admissible, and under our Consti-tution and statutes was *prima facie* proof of plaintiff in error's intent to sell the liquor in question.

The judgment of the county court is affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.