# F. J. KLAASSEN v. STATE.

No. A-5965.   Opinion Filed April 14, 1928.
(266 Pac. 495.)

Ash & Jones, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith 'C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was charged in the county court of Washita county with the crime of manufacturing intoxicat-

ing liquor. A trial was had, and defendant was convicted and sentenced to imprisonment in the county jail for 30 days, and to pay a fine of $325. Motion for a new trial was filed, considered, and overruled, and exceptions saved. From the judgment and sentence the defendant has appealed to this court.

The state introduced testimony tending to show: That a still, whisky and barrels of mash were found in the bend of Horseshoe Lake. The testimony showed there was no one at the still when the parties found it, but there was some evidence of cooking having been done near the still. That, when they approached the still, they met a man coming in a northwesterly direction from where the still was located, but it was not the defendant, the defendant in his own behalf testified that he was not the owner of the still, did not know it was in the woods where it was alleged to have been found, and had nothing to do with the still whatever; that the coat found at the still was his, but that he had loaned it to some man previous to the time the still was alleged to have been found. Defendant also called two witnesses who testified as to his previous good character.

The defendant has assigned several errors alleged to have been committed by the trial court, but the only errors we deem necessary to consider are assignments 2 and 5, which are as follows:

"(2) That said judgment of the court is contrary to the evidence, and is not supported by sufficient evidence."

"(5) The court erred in overruling defendant's motion for a new trial."

The errors will be considered together as they relate to the question of the proper trial of his case. It is urged that the cross-examination of the defendant as a witness in his own behalf was improper and prejudicial. The county attorney on cross-examination asked the defendant the following questions:

"Q. Now, Frank, isn't it a fact you were over at the still that afternoon? A. No.

"Q. You wasn't there? A. No.

"Q. Now isn't it a fact that you and Joe Longley and Jim Webb was running the still when we approached near the still that night? A. No, no.

"Q. You wasn't there? A. No.

"Q. Now isn't it a fact that you and the parties I have named, or at least you and Joe Longley, were at the still when we approached, and, when you heard me coming, didn't you and Longley go east when you first discovered me? A. I wasn't there, Mr. Springer.

"Q. Wasn't you in the room changing your dress? A. No; I was not.

"Q. Didn't you tell me at one time, in my office, that when they came you were in the room changing your clothes? A. How was that?

"Q. Didn't you tell me at one time, in my office, that when they came you were in the room changing your clothes? A. No; I did not."

It is an abuse of discretion to allow questions to be asked the witness which are manifestly calculated to create prejudice in the minds of the jury against the witness, and, if he be the defendant, to influence them to find against the defendant because of such prejudice. The record shows that the county attorney participated in the search, and it was improper for the county attorney to propound the questions he did to defendant upon cross-examination, unless he followed it up by offering proof tending to show that the defendant was at the still that afternoon or participated with the persons named in running the still when the officers approached the place where the still was found. It is a well-established rule that impeaching questions should not be propounded to a witness unless they are based upon facts that the interrogator intends to present in refutation of adverse answering of questions propounded; such line of

questioning should be done good faith, and not for the purpose of prejudicing and arousing suspicion of the jury against the defendant.

It is further urged by the defendant that during the course of the trial the state called Johnny Penner as a witness, by whom the state expected to show that he had been at the still with the defendant, but the witness, when placed on the stand, denied that he had ever been there with the defendant, or that he knew anything about it, and, when the witness stated he had not been at the still, and had not seen the defendant there, the state claimed surprise, and requested the court, after considerable argument had taken place, and testimony had been taken, to excuse the jury, and requested the court to have the witness Penner held for 24 hours, so that an information for perjury could be filed against him. The court, while the witness was on the stand, ordered the witness taken into custody by the sheriff, and the sheriff and his deputies marched the witness Penner out of the courtroom and down the hall, where the jurors had an opportunity to see that the witness had been taken into custody.

In Cosby v. State, 30 Okla. Cr. 294, 236 P. 51, this court in speaking concerning facts similar in effect to facts in this case, says:

"This proceeding could not have resulted otherwise than to convey to the jury the opinion that the court strongly disapproved of the conduct of the witness, and may have influenced the jury in its verdict. * * * A judge should, therefore, be particularly circumspect in his conduct and in the proceedings before him that no intimation of his opinion of the facts presented or the credibility or character of a witness should be made in their presence. There would seem to be no need for an order to arrest the witness in question in the presence of the jury, and to do so was prejudicial to the rights of plaintiff in error. Reed v. State, 5 Okla. Cr. 365, 114 P. 1114."

The action of the court in ordering the witness Pen-

ner taken into custody and permitting him to be taken from the witness chair out of the courtroom, and down the hall by where the jurors were, was here prejudicial to the defendant, and the action of the court in ordering witness taken into custody by the sheriff may have influenced the verdict of the jury, as the jurors generally regard the presiding judge with great respect, and give much weight to his opinion or views, if by chance they should come to its knowledge.

For the errors pointed out, the case is reversed and remanded.

DOYLE, P. J., concurs.

EDWARDS, J., not participating.